# PORTLAND POLICE ASSOCIATION,
## *Respondent,*

*v.*

# CIVIL SERVICE BOARD OF PORTLAND,
## *Appellants.*

## (No. A8004-02027, CA 18732)

628 P2d 421

Richard A. Braman, Portland, argued the cause and filed the briefs for appellants.

Terry DeSylvia, Portland, argued the cause for respondent. With him on the brief were Myron Schreck and Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Susan P. Graber and Pamela L. Jacklin, Portland, filed a brief amicus curiae for American Civil Liberties Union of Oregon, Inc.

James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, Michael J. Tedesco, Assistant Attorney General, and Judith L. Miller, Certified Law Student, Salem, filed a brief amicus curiae for the Governor of the State of Oregon.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a proceeding for declaratory and injunctive relief. Appellants, defendants below, are the City of Portland's Civil Service Board and its individual members (hereinafter Board). The Board is responsible for certifying eligible candidates for appointment to vacant classified civil service positions in the City of Portland, including available positions in the Portland Police Bureau. Respondent Police Association (Association) is the certified bargaining representative for Portland police officers employed by the City of Portland's Police Bureau. The Association sought a declaration that a rule relating to the certification of minority and women candidates for classified civil service positions and adopted by the Board was beyond the Board's authority to adopt and therefore invalid. The trial court agreed with the Association, declared the rule invalid and entered an order restraining the Board from implementing it. The Board appeals. We reverse.

In 1903, the City of Portland adopted a classified civil service system. The purpose of that system is to ensure that all appointments to and promotions in city jobs are made on the basis of fitness and merit alone, and not on the basis of political affiliation. Fitness is to be determined by open competitive examination. To this end, the Portland City Charter was amended to provide for the Civil Service Board. The charter requires that the Board classify applicable city positions and administer competitive examinations for those positions. The examinations are to be given periodically, thereby creating a pool of eligible applicants. The Board determines the minimum qualifying score. All applicants who achieve this score are ranked by the Board according to their relative scores at or above the minimum.

When a vacancy in a classified position occurs, the relevant city bureau or "appointing authority," (as it is termed in the Charter) is to notify the Board. Upon notice the Board

"* * * shall thereupon certify to such appointing authority the names and addresses of the three eligible candidates standing highest upon the register for the class or grade to which such position belongs, but, if there be less than three, the board shall so certify all such candidates upon the register. When vacancies exist in two or more positions of the same class in the same department at the

same time, the board may certify a less number than three candidates for each position, but those certified must be the eligible candidates standing highest * * *. The appointing authority shall appoint to each vacant position, on probation for a period to be fixed by the rules, one of the candidates so certified. Within such period, the appointing authority may discharge such probationer, and, in like manner, appoint another of such candidates, and so continue until all said candidates have been so appointed; *but the appointing authority must make permanent appointment from said list of candidates unless, upon reasons assigned in writing by the appointing authority, the board consents to and does certify a new list of candidates. * * *"* Portland City Charter, § 4-108. (Emphasis supplied.)

This is the so-called "rule of three." It requires the Board to certify the three highest eligible applicants for each vacant civil service position. The appointing authority must then choose one of these three to fill the vacant position unless for some reason a new list is requested and certified by the Board.

The Portland City Charter requires the Board to "* * * make rules to carry out the purpose and provisions of this article, which rules shall provide, in detail, the manner in which examinations shall be held, and the appointments, promotions and removals made in pursuance thereof * * *." Portland City Charter, § 4-105.

Pursuant to its rule-making authority, the Board adopted Rule 3740 relating to "affirmative action" certification of eligible applicants for classified positions. That rule is the one challenged by the Police Association in this case. It provides:

"An appointing authority may request in writing that affirmative action certifications be authorized to fill vacancies, in entry level classifications, in a particular department, office or bureau. The request shall include:

"(a) Identification of the protected group (minorities, a class of minorities, or women) to which the request applies.

"(b) A documented showing that past recruitment, examination and appointment practices have resulted in an underutilization of the protected group in the specific job category within the initiating department, office or bureau.

"(c)   A statement explaining the compelling interest of the department, office or bureau in achieving a balance between members of the protected group in its work force and those in the relevant labor force.

"The request must be approved by the Board. Following · approval, all certifications shall be as provided in this paragraph, until approval of the affirmative action certification is revoked by the Board. When a notice of vacancy in an entry level position is received from a department, office or bureau for which affirmative action certification has been approved, two lists of the names of eligibles available for appointment will be certified by the Board. One list will contain names of the three eligibles highest on the register for the classification and one list will contain names of the three eligibles in the protected group highest on the register. When notified of multiple vacancies, two more names than the number of vacancies will be included in each list. Should the eligible register not contain names of a sufficient number of eligibles in the protected group to meet the requirement of this paragraph, the names of all eligibles in the protected group shall be listed in the certification.

"The purpose of this rule is to aid a department, office or bureau to voluntarily achieve hiring goals according to the Affirmative Action Plan adopted by the City Council, without imposing absolute hiring quotas with respect to a protected group. When there no longer is an underutilization of the protected group in the specific job category within the initiating department, office or bureau, the Board, upon request of the appointing authority or any interested party, will revoke its approval of affirmative action certification for that department, office or bureau."

Rule 3740 allows the Board to certify, upon written request and after a particular showing, a second list of eligible applicants. This second list will be composed of the relevant protected group of persons, *i.e.,* those persons who are underutilized or under-represented in the particular city bureau, department or office making the request. "Underutilization" is defined as "having fewer minorities or women in a particular job group than would reasonably be expected by their presence in the relevant labor force." *See* Civil Service Board Rule 1200.

The Association contends that the Board does not have the authority, under the City Charter, to enact and

implement Rule 3740. It claims that the rule conflicts with section 4-108 of the City Charter, *supra,* and fails to satisfy the Charter's purposes as related to civil service hiring. In the Association's view, the Board can only certify for employment the highest scoring applicants. The Association claims further that the rule is not justified because there is no evidence of discrimination in current city employment practices and that underutilization of certain groups cannot, standing alone, be equated with discrimination. Additionally, the Association contends that the rule violates the Equal Protection Clause of the United States Constitution and the Privileges and Immunities Clause, Art 1, § 20, of the Oregon Constitution.

In response, the Board claims that section 4-108 of the City Charter allows it to adopt rules by which it will consent to certification of applicants for employment other than under the "rule of three." Alternatively the Board contends that, even if the rule is inconsistent with the Board's authority under the city charter, the Board not only has the power but is obligated to initiate affirmative action in compliance with federal, state and city equal employment opportunity laws and regulations.

We agree with the Board that the rule does not conflict with the terms of the City Charter. Accordingly, we need not decide if federal or state law requires the Board to adopt this or any other particular method of implementing an affirmative action program.[1]

The Portland City Charter defines the power and purpose of the Civil Service Board. The charter authorizes the Board to enact rules to carry out its functions. The Board is, like the Portland City Council, a charter-created commission. Its sole function is to administer the operation of the city's classified civil service system. The city council is to administer all of the city's other affairs. Both the city council and the Board possess power within their respective spheres of operation. This power stems from the city charter. *See Drake v. City of Portland,* 172 Or 558, 569, 143 P2d 213 (1943).

---

[1] The parties and amicus spend a great deal of time discussing whether or not this rule is required to implement affirmative action laws and policies and whether or not the rule is constitutional. We think the issue before us is clear, straightforward and far more limited: does the Board have the power to adopt and implement this rule?

■       The city charter requires the Board to certify upon request by the appointing authority the three highest scoring applicants for the relevant vacant civil service position. Rule 3740 does not interfere with this requirement in any way. It simply allows the Board, upon the proper showing, to certify a second list of eligible applicants in addition to the required one. There is nothing in the city charter which prevents the Board from certifying another list. In fact, Section 4-108 allows the Board to do so if that is requested by the appointing authority.

It is true that Section 4-108 does not specifically authorize or necessarily require the rule in question. However, neither does it prohibit the Board from enacting such a rule. That portion of Section 4-108 relied upon by the Board and emphasized above refers to the *appointing authority's* hiring power. It requires the *appointing authority* to hire one of the three highest scoring candidates, as certified by the Board, unless it requests in writing, and with stated reasons, a new list. Rule 3740 simply informs Portland's departments, bureaus and offices of the way the Board proposes to deal with one basis for requesting a new or additional list of potential employes.

This rule is innocuous. It simply provides a method by which city bureaus, offices and departments may attempt to comply with federal, state and city equal opportunity employment goals where they—not the Board—find and certify that such an attempt is warranted. *See* Title VII of the Civil Rights Act of 1964 (42 USC §§ 2000e et seq); ORS ch 659; Portland City Ordinance No. 144724. The rule does not require appointing authorities to request a second list or to hire someone from that list; it simply assists them in using affirmative action certification as a means of achieving equality in their department's work force where they find that appropriate. They may choose not to and may instead turn to other means of increasing the numbers of minorities and women in their department.

Contrary to the Association's claim, Rule 3740 does not interfere with the purpose of civil service hiring. The city charter provides that only fit persons, as determined by an open competitive examination, are to be appointed to vacant classified civil service positions. The second or alternative list, like the initial list, will be composed only of

persons who have achieved at least the minimum score, as determined by the Board on the examination. All persons who attain this score are deemed fit to fill the position in question. Moreover, Section 4-108 makes it clear that an individual applicant's score is not the only factor the prospective employer may consider in making its hiring decision: the department or bureau is to choose one of the three highest scores, not necessarily the highest one. Additionally, it can choose not to pick any of the three highest but instead request that a new list be certified by the Board. Thus, the possibility exists even without affirmative action certification that a minority person or woman who has a lower score than a white male might nevertheless be hired over him.

As noted, the Association also claims that the rule violates both the equal protection clause of the federal constitution and the privileges and immunities clause of the Oregon constitution. However, the case presently before us does not present this issue. In the first place, this contention was not raised by the Association in its original request for relief from the trial court. Secondly, there is no evidence that this rule, on its face, treats the Association or any of its members in an unconstitutionally discriminatory manner. At worst, the rule might discriminate against potential future members of the Association.

■ We likewise dismiss respondent's claim that the rule, if implemented, will cause irreparable harm to the Association and its members. The Association claims that it will result in less qualified employes and that this will affect the safety, morale and working conditions in the Portland Police Bureau. Since, as already demonstrated, only qualified people can be hired in any event, this argument is specious. The Association claims further that the rule will promote intergroup hostility, resentment, distrust and tension. There is simply no evidence in the record before us to support this claim and, even if it were true, we fail to see how that fact would entitle the Association to the kind of judicial relief it seeks here.

Reversed.